IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| KYLE RICHARD BISHOP, III, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WARDEN GREGORY MCLAUGHLIN, )<br>JOHN HILL, *et al.,* )<br>)<br>Defendants. )<br>) | CIVIL ACTION NO. 5:11-CV-107(MTT) |

## ORDER

This matter is before the Court on Magistrate Judge Charles H. Weigle's Report and Recommendation on the Defendants' Motion to Dismiss and the Plaintiff's Motion to Dismiss and Motion for Leave to Amend his Complaint to join a necessary party defendant. (Doc. 28). The Magistrate Judge recommends dismissing the Plaintiff's First Amendment right to access courts claim because he failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). The Magistrate Judge also recommends dismissing the Plaintiff's First Amendment retaliation claim because the Plaintiff failed to state a claim upon which relief could be granted. The Magistrate Judge recommends denying the Plaintiff's motions as moot.

The Plaintiff has filed an objection to the Recommendation, the Defendants have responded to his objection, and the Plaintiff has filed a reply. (Docs. 29, 30, 31). Pursuant to 28 U.S.C. § 636(b)(1), the Court has thoroughly considered the Plaintiff's objection and response in opposition and has made a de novo determination on the Recommendation.

The Recommendation is adopted only with regard to the Plaintiff's First Amendment retaliation claim.  With regard to the Plaintiff's First Amendment right to access courts claim, the Court finds the Plaintiff has properly exhausted his administrative remedies.  However, the Plaintiff fails to state an adequate claim against Defendants Gregory McLaughlin and John Hill, and the Motion to Dismiss is **GRANTED** with regard to Defendants McLaughlin and Hill.  Further, the Plaintiff's Motion to add a necessary party defendant and Motion to Dismiss Defendants Mary Colbert, Jamie Hall and Lorrita Johnson are both **GRANTED.**  The Plaintiff has sufficiently stated a First Amendment right to access courts claim against Defendant Jane or John Doe.  Therefore, the only remaining claim is the Plaintiff's access to courts claim against Defendant Jane or John Doe in charge of receiving Federal Express deliveries at the Macon State Prison on September 15, 2010.

## I.   FACTUAL AND PROCEDURAL HISTORY

The Plaintiff is currently serving a thirty year prison sentence for child molestation, aggravated child molestation and sexual battery.  He obtained an affidavit from his victim recanting her testimony and filed an Extraordinary Motion for New Trial in Cobb County, Georgia.  After an evidentiary hearing, the Plaintiff's motion was denied on August 20, 2010, and he had until September 18, 2010, to file an Application for Discretionary Appeal in the Georgia Court of Appeals.  The Plaintiff prepared this application and mailed it to a law firm in Virginia that provides free copying and typing services for the Plaintiff.  On September 14, 2010, the law firm sent, by Federal Express overnight delivery, a package containing six typed copies of his Application.  The phrase, "Legal Mail-Open w/ Inmate" was written under the return address on the

Federal Express label.  On September 22, 2010, the Federal Express package was received by the Virginia law firm with a label marked "Refused: INMATE CANT REC PACKAGES," and the Federal Express records indicate that the Plaintiff's legal mail was "refused by recipient facility."  (Doc. 1 at 6).  After being told that his package had been returned, the Plaintiff filed his Application on September 29, 2010, and it was denied as untimely by the Georgia Court of Appeals in October 2010.[1]

On October 14, 2010, the Plaintiff filed an informal grievance complaining of the prison officials' failure to allow the Plaintiff to receive the Federal Express package.  After the informal grievance was denied, the Plaintiff filed a formal grievance on October 19, 2010.  The Plaintiff alleges he attached to the formal grievance a two-sided, one-page Witness Statement form that was provided to him by the prison.  The Plaintiff alleges, and the Grievance Policy supports this allegation, that the Witness Statement form is an "approved form" to be utilized in the formal grievance procedure.  The Plaintiff's formal grievance was subsequently rejected for a "policy violation" because "only one (1) additional page will be attached by the inmate to the formal grievance form. Formal grievances with additional pages will be rejected…. [I]t is rejected at the institutional level."  (Doc. 13-9 at 3).  Although there were boxes available for the Warden to check indicating whether or not rejection of the Plaintiff's formal grievance issue was appealable, no box was checked.  However, according to the Grievance Policy, "all formal grievances may be appealed."  (Doc. 13-3 at 8).   Following this denial, the Plaintiff met with Defendant Hill to request an appeal.  According to the

---

[1] The record does not indicate whether the Plaintiff submitted a handwritten appeal instead of a typed appeal.  However, it does indicate, that he eventually received his mail in October 2010, after he had submitted his discretionary appeal to the Georgia Court of Appeals

Plaintiff, Defendant Hill threatened him with isolation if he pursued his grievance appeal, but eventually gave the Plaintiff an appeal form. The Plaintiff completed the appeal form and returned it to Defendant Hill. However, according to the Plaintiff, Defendant Hill did not file the appeal.

On March 18, 2011, the Plaintiff initiated his lawsuit pursuant to 42 U.S.C. § 1983 alleging that: (1) the Defendants violated his First Amendment rights by failing to accept and provide the Plaintiff his Federal Express package containing the Plaintiff's legal mail, which ultimately lead to his failure to file a timely appeal; and (2) Defendant Hill retaliated against the Plaintiff in violation of his First Amendment rights by threatening to put him in isolation if he pursued his appeal of the denial of his formal grievance. The Defendants seek dismissal for various reasons, including failure to exhaust and failure to state a claim upon which relief can be granted. After the Defendants moved for dismissal, the Plaintiff moved to dismiss Defendants Mary Colbert, Jamie Hall and Lorrita Johnson because he realized that Federal Express packages were not handled by mailroom officers, but instead handled by a particular employee who only dealt with Federal Express packages. Simultaneously with the filing of that motion, the Plaintiff also moved for leave to amend his complaint and join "John or Jane Doe, Macon State Prison employee designated for receiving Fedex deliveries" on September 15, 2010. (Doc. 21 at 1).

## II. THE PLAINTIFF'S MOTION TO DISMISS AND MOTION FOR LEAVE TO AMEND/JOIN A NECESSARY PARTY-DEFENDANT

The Plaintiff has moved to dismiss Defendants Mary Colbert, Jamie Hall and Lorrita Johnson because they were not responsible for the rejection of his Federal

Express delivery package. The Motion is **GRANTED**, and Defendants Mary Colbert, Jamie Hall and Lorrita Johnson are **DISMISSED**.

The Plaintiff has also moved for leave to amend his complaint and join "John or Jane Doe, Macon State Prison employee designated for receiving Fedex deliveries." (Doc. 21 at 1). The Court should freely grant leave to amend "when justice so requires." Fed. R. Civ. Pro. 15(a)(2). The Court has no way of knowing the names of Defendant John or Jane Doe in order to perfect service of process. However, the Eleventh Circuit has noted that a prisoner-plaintiff may face difficulty in ascertaining the alleged wrongdoer and "district courts [should] assist prisoners in discovering the identity of the proper defendants." *Brown v. Sikes*, 212 F.3d 1205, 1209 n. 4 (11th Cir. 2000). Here, the Plaintiff describes Jane or John Doe as a Macon State Prison employee who was in charge of receiving Federal Express deliveries on September 15, 2010. Limited discovery should reveal Defendant Jane or John Doe's identity given the specificity of the Plaintiff's motion, and if the prison does not have a specific person in charge of receiving Federal Express deliveries, then limited discovery would reveal that as well.[2] Therefore, the Plaintiff is permitted to join "John or Jane Doe, Macon State Prison employee designated for receiving Fedex deliveries." Accordingly, the Motion is **GRANTED**. (Doc. 21). The Plaintiff's First Amendment access to courts claim against John or Jane Doe designated for receiving Federal Express deliveries will be analyzed below along with the other allegations in the Plaintiff's complaint.

---

[2] The Court notes that the Defendants have not claimed that Macon State Prison does not employ a particular employee who is in charge of receiving Federal Express packages. Instead, the Defendants broadly argue that Jane or John Doe is not specific enough, while failing to address the fact that the Plaintiff specified Jane or John Doe who received the Federal Express deliveries on September 15, 2010.

### III.     THE DEFENDANTS' MOTION TO DISMISS

A.     <u>First Amendment Access to Courts Claim</u>

    1.     **Failure to Exhaust Administrative Remedies**

Initially, the Defendants contended that the Plaintiff failed to exhaust his administrative remedies with regard to his First Amendment right to access courts claim because he failed to file an appeal after his formal grievance was denied.  The grievance process outlined in the Georgia Department of Corrections Standard Operating Procedures (GDOC SOP) requires a prisoner to follow three steps to exhaust his administrative remedies: (1) informal grievance, (2) formal grievance, and (3) grievance appeal.  (Doc. 13-1 at 8).  The Defendants argue that "records for [the Plaintiff's] grievance show that [the] Plaintiff filed an informal and a formal grievance, that the formal grievance was rejected at the institutional level, and that he did not file a grievance appeal after rejection of the formal grievance."  (Doc. 13-1 at 8-9).  Because of his failure to file a grievance appeal, the Defendants contend the Plaintiff failed to complete the grievance process for his claim.  The Defendants do not address the Plaintiff's contention that he attempted to appeal his formal grievance, nor do they offer any contradictory testimony regarding Defendant Hill's alleged refusal to turn in the appeal for the Plaintiff.

The Magistrate Judge agreed that the Plaintiff failed to exhaust, but for reasons different than those argued by the Defendants.[3]  The Magistrate Judge contends that, even assuming all the Plaintiff's allegations as true, the Plaintiff failed to properly

---

[3] The Defendants, in their response to the Plaintiff's objection to the Recommendation, now embrace the Recommendation's reasoning involving the exhaustion of the Plaintiff's claim.

exhaust his administrative remedies. (Doc. 28 at 5). The Recommendation concludes that the Plaintiff's formal grievance was rejected at the institutional level because the Plaintiff attached a "two-page affidavit to his formal grievance," when the SOP only allowed one additional page to be attached to a prisoner's formal grievance. The Recommendation reasons that a "non-compliant formal grievance … [could not] be appealed," and that the Plaintiff instead should have sought leave to re-file his formal grievance. (Doc. 28 at 5). The Recommendation cites an unpublished Eleventh Circuit case, *Bugge v. Roberts*, 430 Fed. App'x 753 (11th Cir. 2011), to support this conclusion.[4] First, *Bugge* merely states that pursuant to the grievance policy in that case, the prisoner was told by prison officials that he could not appeal the denial of his out-of-time formal grievance. 430 Fed. App'x at 756.[5] The Eleventh Circuit held that the prisoner's formal grievance was, in fact, not untimely, and because the prisoner was told he could not appeal, he was not required to in order to exhaust his administrative remedies. *Id.* (citing *Miller v. Tanner*, 196 F.3d 1190, 1194 (11th Cir. 1999) (holding that an inmate is not required, in order to exhaust administrative remedies, to appeal an institution-level denial when he is told he may not appeal)). This case does not stand for the proposition that all non-compliant formal grievances cannot be appealed. Nevertheless, the Recommendation concludes that "Defendant Hill did not submit the appeal to Internal Affairs, as the denial of a non-compliant formal grievance was not appealable." (Doc. 28 at 5). Thus, according to the Recommendation, the Plaintiff did

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[5] Although *Bugge* originated in Georgia, it is unclear whether the grievance policy in that case is the same policy as the one in this case. However, this does not impact the Court's analysis.

not properly exhaust his remedies because he did not properly file a formal grievance and the rejection of the non-compliant formal grievance could not be appealed.

The Plaintiff contends he did exhaust his administrative remedies by filing a formal grievance and then appealing the denial of that formal grievance in compliance with the SOP. The Plaintiff argues he exhausted his administrative remedies, or at least attempted to, because the purported "two-page" attachment to his formal grievance was actually a one-page, two-sided Witness Statement form, that was provided to him by the prison to use in the grievance process. Thus, he did properly file his formal grievance, even though the grievance was rejected for having two pages attached. Further, the Plaintiff argues he attempted to appeal the grievance, and in fact, obtained and completed a grievance appeal form, then gave it to Defendant Hill to file with the appropriate party.

The PLRA requires an inmate to exhaust all available administrative remedies before filing suit. 42 U.S.C. § 1997e(a). Claims that are not properly exhausted must be dismissed. *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999). When a motion to dismiss is based on a failure to exhaust defense, the review of the motion requires two steps. *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, the Court looks to the factual allegations from both parties, taking the Plaintiff's version of the facts as true. *Id.* at 1082. "If, in that light, the [Defendants are] entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* However, if the complaint is not subject to dismissal under the Plaintiff's version of the facts, the Court must then make specific findings of fact to resolve any disputed factual

issues. *Id.* The Defendants have the burden to set forth specific facts proving that the Plaintiff failed to exhaust his available administrative remedies. *Id.*

Here, under the first *Turner* step, taking the Plaintiff's version of the facts as true, his claim cannot be dismissed for failure to exhaust *available* remedies. In determining whether he exhausted his administrative remedies, the Court must look, first, to "what the procedures were that [the plaintiff] had to follow." *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999). Here, the applicable SOP provides "[o]nly one additional page will be attached by the inmate to the Formal Grievance Form. Formal Grievances with additional pages will be rejected." (Doc. 13-3). The SOP gives no further guidance regarding the specifics regarding the permissible one-page attachment to a formal grievance.

The SOP references the prison-provided Witness Statement forms, and how the forms are used by counselors in the grievance process to investigate claims. The SOP does not indicate whether a prisoner can attach this form to his grievance or not. Further, nothing in the SOP indicates that the Plaintiff was required to re-file his rejected formal grievance as the Recommendation suggests. In fact, the SOP states that "all formal grievances are appealable." The rejection of the Plaintiff's formal grievance had three empty boxes, stating (1) appealable, (2) not appealable, and (3) suspend for internal investigation. None of these boxes were checked, nor is there evidence that Defendant Hill told the Plaintiff to re-file or told him that he could not file an appeal because his formal grievance was not appealable.

Under the Plaintiff's version of the facts he attempted to exhaust his remedies. First, the attachment to his formal grievance, he alleges, was a one-page, two-sided

document that was "approved" for use in the grievance process. Therefore, his attachment of this document complied with the "only one additional page" requirement under the SOP. Nothing in the SOP states that a one-page, two-sided, prison-provided Witness Statement form could not be attached to his formal grievance. Second, following the denial of his formal grievance, the Plaintiff alleges he attempted to appeal. He has provided the Court with a copy of his Grievance Appeal, and, under his version of the facts, he obtained and filled out the form, then gave it to Defendant Hill to file. Defendant Hill never filed the Plaintiff's grievance appeal. Therefore, under the first *Turner* step, taking all the Plaintiff's allegations as true, the Plaintiff properly exhausted his available administrative remedies.

Under the second step of *Turner*, the Court must assess whether the Defendants have put forth specific facts to disprove the Plaintiff's allegations. They have not. First, the Defendants argue that the grievance SOP "*contemplates* that witness statements (in the form appended to the policy) will be collected by the counselor in responding to a formal grievance, not that they will be attached by the inmate to his formal grievance." (Doc. 30 at 2) (emphasis added). An examination of the Formal Grievance SOP section merely indicates that the Plaintiff can attach one additional page to his formal grievance. Then, following the submission of the formal grievance, the grievance counselor should investigate, look into witness statements, and then submit his findings. Perhaps drafters of the SOPs did "contemplate" that prisoners should not attach Witness Statement forms to formal grievances, but instead wait until their counselors ask for the forms. But they did not say that in the SOP, and the Court will not write such a restriction in the SOP grievance procedure. Moreover, nothing on the prison-provided

Witness Statement form indicates it cannot be used as an attachment to a formal grievance.

Finally, the Defendants offer no evidence that formal grievances rejected for non-compliance are not appealable. To the contrary, the SOP clearly states "all formal grievances may be appealed." (Doc. 13-3 at 8). The Defendants do not respond to the Plaintiff's contention that Defendant Hill gave him a grievance appeal form and then, after the Plaintiff completed the form, failed to file it. They merely argue that their records do not indicate the Plaintiff filed an appeal, but they fail to dispute the Plaintiff's contention that he did file an appeal by giving it to Defendant Hill. The Plaintiff provided the Court with a dated copy of his completed grievance appeal form. (Doc. 1-2 at 23). The Plaintiff could not have done more to exhaust his administrative remedies than give a completed grievance appeal to his grievance counselor, Defendant Hill. Thus, even under *Turner*'s second step, the facts show that the Plaintiff adequately exhausted the available grievance administrative procedures with regard to his First Amendment access to courts claim.

### 2. Motion To Dismiss Standard

The Plaintiff's substantive claims are subject to the Federal Rule of Civil Procedure 12(b)(6) standard of review. Therefore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A pleading cannot survive a motion to dismiss "if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted). Further, pro se pleadings are held to a less stringent

standard than pleadings drafted by attorneys and are liberally construed. *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir.1998).

### 3. The Plaintiff's First Amendment Access to Courts Claim against Defendants Gregory McLaughlin and John Hill

Defendants McLaughlin and Hill are supervisory officials with the Macon State Prison. The Plaintiff broadly alleges that both men are involved with the refusal of his legal mail "per Clinton Perry's implications." (Doc. 6 at 11-12). However, other than conclusory allegations, Defendant Hill's alleged involvement was with regard to the grievance process, not with the actual denial of the Plaintiff's legal mail. (Doc. 6 at 11-12). The Plaintiff specifically alleges Defendant McLaughlin supervised the subordinates who refused the Plaintiff's legal mail and administered the SOPs regarding mail room operations.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of the subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotations and citations omitted). Thus, supervisory officials may only be held liable when they have (1) personally participated in unconstitutional conduct or (2) where there is "a causal connection between [their] actions … and the alleged constitutional deprivation." *Id.* To establish this causal connection, a plaintiff must show that the supervisor either instituted a custom or policy that resulted in the constitutional violation, directed his subordinates to act unlawfully, or had knowledge his subordinates

were acting unlawfully and failed to stop the behavior.  *Gross v. White*, 340 Fed. App'x 527, 531 (11th Cir. 2009).[6]

Here, because the Plaintiff fails to allege specific involvement by McLaughlin or Hill in the prison's refusal to give him his legal mail, his claims can only be based upon McLaughlin's and Hill's failure to adequately supervise and implement the SOPs that would have enabled the Plaintiff to receive his legal mail.   However, under § 1983, they cannot be held liable for the failure to exercise their supervisory responsibilities over subordinates.  The Plaintiff must allege that McLaughlin and Hill somehow participated in the violation, either by directing their subordinates to violate the Plaintiff's rights, establishing a policy or custom that led to the violation of his rights, or by failing to act when they knew such a violation would likely occur.  There is nothing in the Plaintiff's complaint or supplemental complaint to indicate that McLaughlin or Hill directed any person to refuse the Plaintiff's legal mail.  In the absence of such allegations, the complaint fails to state a First Amendment access to courts claim against Defendants McLaughlin and Hill upon which relief can be granted.

### 4. The Plaintiff's First Amendment Right to Access Courts Claim against Defendant Jane or John Doe who was the Macon State Prison Employee on September 15, 2010.

The Plaintiff sufficiently alleges an access to courts claim against Defendant John or Jane Doe, who was the Macon State Prison employee designated for receiving Federal Express deliveries on September 15, 2010.  State prisoners have an enforceable First Amendment right to access the courts under the Fourteenth Amendment.  *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998).  A prisoner

---

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

must show an actual injury as a "constitutional prerequisite" to bring a right to access courts claim. *Bass v. Singletary*, 143 F.3d 1442, 1444 (11th Cir. 1988) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).

However, the actual injury requirement is not satisfied by mere frustration of a legal claim. *Lewis,* 518 U.S. at 354. An actual injury exists if a direct appeal of a conviction, a habeas petition, or a non-frivolous civil rights action implicating a basic constitutional right was frustrated or impeded. *Id.* at 353–54; *Bass*, 143 F.3d at 1445. Further, "a plaintiff seeking to succeed on a claim that [his] right of access to the courts has been impeded must allege intentional conduct." *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005) (holding that a prison official's intentional conduct that interfered with a plaintiff's legal mail violated his access to the courts). Thus, the Plaintiff must allege facts to show intentional conduct by a prison official and an actual injury in the pursuit of the Plaintiff's non-frivolous case. *Wilson*, 163 F.3d at 1291 (citing *Lewis*, 518 U.S. at 355-57).

Here, the Plaintiff alleges the Defendant rejected his legal mail inhibiting his ability to file his Application for Discretionary Appeal for a New Trial with the Georgia Court of Appeals. With regard to an access to courts claim based on the denial of a prisoner's legal mail, "the states must permit the prisoner meaningful access to the postal system as this is typically the only manner in which a prisoner may communicate with the court." *Gramegna v. Johnson*, 846 F.2d 675, 677 (11th Cir. 1988). The actual denial of legal papers to a prisoner—not the resulting deprivation—is what brings the claim within the scope of constitutional protection. *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986). To bring a successful access to courts claim based on the denial

of legal mail, the facts must allege that a particular piece of mail went into the hands of the defendant or that the defendant instituted a regulation or practice that would delay receipt of a prisoner's mail. *Gramegna*, 846 F.2d at 677.

Additionally, "a prisoner's constitutional right of access to the courts requires that incoming legal mail from his attorneys, properly marked as such … be opened only in the inmate's presence." *Al-Amin v. Smith*, 511 F.3d 1317, 1325 (11th Cir. 2008). Thus, prisons may regulate the opening of properly labeled legal mail, but may not unjustifiably deny access to clearly marked legal mail without infringing on a prisoner's constitutional right to access courts.

The Defendants contend that the Plaintiff fails to state an adequate access to courts claim. First, the Defendants state that "the complaint does not actually allege with particulars that anyone hindered the Plaintiff's efforts to make his Court of Appeals filing deadline." (Doc.13-1 at 14). The Defendants also contend that the Plaintiff could have hand-written his appeal in accordance with Georgia Court of Appeals Rule 1(c), timely filed his hand-written appeal or purchased copies of legal papers from the prison, instead of sending his Appeal Application to be prepared out of state. (Doc. 13-1 at 14-15).

Here, taking the Plaintiff's facts as true, he alleged sufficient facts to support his claim that the Defendant John or Jane Doe who is in charge of receiving Federal Express deliveries on September 15, 2010 denied him access to his legal mail. After the Plaintiff's Extraordinary Motion for New Trial in Cobb County, Georgia was denied on August 20, 2010, he had until September 18, 2010, to timely file for an appeal. The Plaintiff prepared an Application for Discretionary Appeal in the Georgia Court of

Appeals and mailed it to a Virginia law firm that provides free copying and typing services to him.  On September 14, 2010, the law firm sent a Federal Express package overnight that contained six typed copies of his Application for Discretionary Appeal to the Plaintiff, which was properly labeled with the notation, "Legal Mail-Open w/ Inmate," written under the return address on the package label.  On September 22, 2010, the Federal Express package was returned to the law firm marked with the notation, "Refused:  INMATE CANT REC PACKAGE," and Federal Express records show that the mail was "refused by recipient facility."  (Doc. 1 at 6).

The alleged facts show that the Macon State Employee who received the Plaintiff's Federal Express delivery impeded the Plaintiff's access to the courts by refusing the Plaintiff's package that was properly labeled to indicate legal mail.  Further, this employee's alleged action directly prevented the Plaintiff from timely filing his Application for Discretionary Appeal regarding his Motion for New Trial.  The law firm subsequently notified the Plaintiff that his package had been returned on September 22, 2010; however, this was four days after the Plaintiff's deadline to timely file his appeal.  The Plaintiff then filed his Application on September 29, 2010.  It was denied by the Georgia Court of Appeals in October 2010 as untimely.   Thus, as a result of the prison's denial of the Plaintiff's legal mail, the Plaintiff missed his opportunity to timely file his Application for Discretionary Appeal with the Georgia Court of Appeals by the deadline of September 18, 2010.  Therefore, taking the Plaintiff's facts as true, he sufficiently alleges a claim that he was denied access to his legal mail.

### B.     The Plaintiff's Retaliation Claim

The Plaintiff alleges that Defendant Hill retaliated against him in violation of his First Amendment rights by threatening to put the Plaintiff in isolation if he pursued his appeal of the denial of his formal grievance.  The Magistrate Judge recommends granting Defendant Hill's motion to dismiss because the Plaintiff has failed to state a First Amendment claim of retaliation.  The Plaintiff failed to allege that Defendant Hill's conduct had any adverse effect on his speech because the Plaintiff contends he still attempted to file a grievance appeal.  Thus, Defendant Hill's conduct did not deter the Plaintiff from attempting to appeal the denial of his grievance, nor is there any evidence that Defendant Hill acted on his threats.

Pursuant to 28 U.S.C. § 636(b)(1), the Court has thoroughly considered the Plaintiff's objection to the portions of the Recommendation pertaining to the Plaintiff's retaliation claim but concludes that his objections do not warrant rejection or modification of the Magistrate Judge's findings.  The Court accepts and adopts the findings, conclusions and recommendations of the Magistrate Judge, and the Motion to Dismiss is **GRANTED** with regard to the Plaintiff's retaliation claim.

### IV.    CONCLUSION

The Recommendation is adopted only with regard to the Plaintiff's First Amendment retaliation claim.  With regard to the Plaintiff's First Amendment right to access courts claim, he has properly exhausted his administrative remedies regarding the issue.  However, the Plaintiff fails to state a claim against Defendants Gregory McLaughlin and John Hill, and the Motion to Dismiss is **GRANTED** with regard to

Defendants McLaughlin and Hill. Further, the Plaintiff's Motion to Amend and add a necessary party defendant and Motion to Dismiss Defendants Mary Colbert, Jamie Hall and Lorrita Johnson are both **GRANTED**. The Plaintiff has sufficiently stated a First Amendment right to access courts claim against Defendant Jane or John Doe. Therefore, the only remaining claim is the Plaintiff's access to courts claim against Defendant Jane or John Doe in charge of receiving Federal Express deliveries at Macon State Prison on September 15, 2010.

Because no service can be made on Defendant Jane or John Doe in charge of receiving Federal Express deliveries for Macon State Prison on September 15, 2010, the Court will allow the Plaintiff to perform limited discovery on Defendant Warden Gregory McLaughlin in order to determine the name of this employee. The Plaintiff shall have 60 days from the date of this order to ascertain the identity of this employee and to substitute the employee's name as the Defendant. The Order dismissing the Defendants shall be effective upon the expiration of the 60 day discovery period. Should the Plaintiff fail to ascertain the identities of Defendant Jane or John Doe in charge of receiving Federal Express deliveries at Macon State Prison on September 15, 2010 and amend his Complaint within the 60 day time period, the Defendants, and the entire case, will be dismissed.

**SO ORDERED**, this the 26th day of March, 2012.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT