IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| KYLE RICHARD BISHOP, III, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 5:11-CV-107(MTT) |
| WARDEN GREGORY MCLAUGHLIN, JOHN HILL, *et al.,* | ) |
| Defendants. | ) |

## ORDER

Before the Court is Magistrate Judge Charles H. Weigle's Recommendation (Doc. 65) on the Plaintiff's Motion to Amend (Doc. 58) and the Defendants' renewed Motion to Dismiss (Doc. 59). The Magistrate Judge recommends granting the Defendants' Motion because the Plaintiff lacks standing due to his failure to show an actual injury and because the Georgia Department of Corrections' policy provides the Plaintiff with meaningful access to the courts. (Doc. 65 at 5). Because of his recommendation to grant the Defendants' Motion to Dismiss, the Magistrate Judge recommends denying the Plaintiff's Motion to Amend as futile. (Doc. 65 at 1). The Plaintiff has objected to the Recommendation. (Doc. 66). For the following reasons, the Recommendation is **ADOPTED** in part, the Defendants' Motion is **GRANTED,** and the Plaintiff's Motion is **DENIED** as futile.

The Court has reviewed the Recommendation and the Plaintiff's Objection and made a de novo determination on those portions of the Recommendation to which the

Plaintiff objects.  However, the Plaintiff's Objection does not undermine the Magistrate Judge's ultimate recommendation to grant the Defendants' Motion and deny the Plaintiff's Motion.

First, the Court notes that the Defendants previously moved to dismiss arguing that the Plaintiff failed to state an access to courts claim for two reasons: (1) because the complaint did not allege with particulars how any "of the named Defendants hindered [the] Plaintiff's efforts to make his Court of Appeals filing deadline"[1] and (2) because "on its face the complaint shows that [the] Defendants did not hinder [the] Plaintiff's state appeal process" since the Plaintiff could have purchased copies of his legal papers at the prison rather than sending them out of state to be copied.  (Doc. 13-1 at 14-15; Doc. 24 at 6).  Further, the Defendants contended that it was not the individuals in the mailroom responsible for rejecting Federal Express packages, and instead indicated another area of the prison dealt with those types of deliveries.  Because of this, the Court, while dismissing the Plaintiff's retaliation claim, allowed limited discovery for the Plaintiff to determine who was, in fact, responsible for rejecting the Federal Express package containing his legal mail.  (Doc. 32).

The Defendants first alleged that it was the GDOC's policy to prohibit Federal Express package delivery when they filed their response (Doc. 44-1) to the Plaintiff's Discovery Motion which was attached as an exhibit to the Defendants' Response (Doc. 44) to the Plaintiff's Motion for Contempt (Doc. 42).  There, the Defendants alleged that "[t]here was no Macon State Prison employee in charge of receiving Federal Express

---

[1] The Defendants further argued that the Plaintiff's Complaint acknowledged that other possible designees might have refused the Plaintiff's mail, further bolstering their contention that the Plaintiff failed to show that any of the named Defendants refused his legal mail.  (Doc. 13-1 at 15).

2

deliveries…. Inmates are not permitted to send or receive letters or packages by Federal Express delivery." (Doc. 14-1 at 3). After this discovery and a hearing (Doc. 56) further developing the Defendants' allegation that the prison's policy prohibited Federal Express package deliveries, the Plaintiff moved to amend his complaint to add Commissioner Brian Owens as a Defendant (Doc. 58). The Plaintiff contends that Commissioner Owens is responsible because the GDOC policy that prohibits the delivery of Federal Express packages to the prison—even those containing legal mail— prohibited him from timely filing his Application for Discretionary Appeal with the Georgia Court of Appeals. (Doc. 58 at 3-5). All this is frustrating to the Court. Had the Defendants contended that it was GDOC's policy to reject all Federal Express packages, perhaps the Plaintiff's access to courts claim could have been properly analyzed months ago without the need for additional, now pointless, discovery to determine "who" rejected the Plaintiff's legal mail.

Now, the Plaintiff seeks to adjust his access to courts claim to address the Defendants' new position: After the Plaintiff's Extraordinary Motion for New Trial in Cobb County was denied, he was unable to file his Application for Discretionary Appeal with the Georgia Court of Appeals in a timely manner because of the GDOC's policy that prohibited the delivery of Federal Express packages to the prison, even those containing legal mail.

The Court agrees with the Magistrate Judge's determination that the Plaintiff has failed to establish standing to assert his access to courts claim. The Magistrate Judge found that, though missing a filing deadline *could* constitute an actual injury, because the Plaintiff's underling cause of action was frivolous, the Plaintiff did not meet the

3

actual injury requirements necessary to bring an access to courts claim.  As the Recommendation points out, the Plaintiff's motion for a new trial was based on a victim recantation, and under Georgia law a recantation of a trial witness's testimony is not grounds for a new trial.  *See* (Doc. 65 at 6 for a recitation of the applicable Georgia law).

In addition to the Recommendation's analysis, an unpublished Eleventh Circuit case, *Hall v. Secretary for the Department of Corrections*, 304 Fed. App'x 848 (11th Cir. 2008), provides further support for the Court's determination that the Plaintiff has failed to allege an actual injury.[2]  In *Hall*, because Hall's "motion for a rehearing which he alleged was untimely filed because of the actions of the defendants, was *discretionary* and related to a motion … that had already been considered on the merits[,]" the Eleventh Circuit held that the district court did not err in its determination that Hall had failed to allege an actual injury.  *Hall*, 304 Fed. App'x at 850 (emphasis added).  Here, the Plaintiff's allegations are almost identical.  He alleges that he was prevented from filing a *discretionary* appeal that was related to his Extraordinary Motion for New Trial that had already been considered on the merits (in fact, the state court held a hearing before denying the motion).  Thus, with regard to the determination that the Plaintiff failed to allege an actual injury, the Recommendation is **ADOPTED**.

However, the Court does not, and cannot, determine whether the GDOC policy provides the Plaintiff with meaningful access to courts.  The Recommendation determined that "[e]ven if [the] Plaintiff's underlying claim had not been frivolous, [the] Plaintiff has failed to allege that [the Defendants] denied him meaningful access to

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

courts through the GDOC's mail policy." (Doc. 65 at 7).  As the Recommendation points out, prisons are required to provide inmates with a reasonably adequate opportunity to present claims of constitutional violations to the courts.  *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  However, contrary to the Recommendation, the analysis does not end simply with whether, generally, there was a reasonable opportunity for the Plaintiff to access the courts.

When a prison's regulation or policy allegedly infringes on an inmates' constitutional rights, the Court must employ the four factor test established in *Turner v. Safley*, 482 U.S. 78 (1987).  *Al-Amin v. Smith*, 511 F.3d 1317, 1327-28 (11th Cir. 2008) (where the Eleventh Circuit applied the four factor *Turner* test in determining whether a prison's regulation infringed on an inmate's right to access the courts).  In determining whether a prison regulation improperly infringes on an inmate's constitutional rights, the factors to be considered include: (1) whether there is a valid, rational relationship between the regulation and the legitimate government interest it serves; (2) whether there are alternative means of exercising the right available to the inmates; (3) the impact accommodation of the asserted right will have on correctional staff and other inmates; and (4) the absence of ready alternatives as evidence of reasonableness of the regulation.  *Turner,* 482 U.S. at 89.  Because the purpose of the prison's policy is not in the record, the Court simply does not have the facts here to apply *Turner* and to determine whether the prison's policy of refusing all Federal Express packages—even those containing legal mail—infringes on an inmates' constitutional rights, and if it does,

whether it is reasonably related to a "legitimate penological interest." [3]  *Id.*  Therefore, the Recommendation is not adopted with regard to the determination that even if the Plaintiff had standing, he failed to allege an access to courts claim.

Therefore, the Recommendation is **ADOPTED** in part, and the Defendants' Motion to Dismiss is **GRANTED**.   Further, the Plaintiff's Motion to Amend is **DENIED**.  Accordingly, this case is **DISMISSED**.

**SO ORDERED**, this 30th day of November, 2012.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[3] The Court notes that the prison's policy restricting Federal Express package deliveries is not a regulation that specifically prohibits an inmate's right to access the courts on its face, but rather prohibits a general method of receiving and delivering mail.  However, because the Plaintiff alleges that this prison policy, as applied, infringed on his constitutional rights, the Court should apply *Turner* in determining whether the regulation is reasonably related to the prison's "legitimate penological interest."  Given that the Federal Express delivery prohibition is a general policy, it would not be difficult for the prison to establish that the regulation is reasonably related to a legitimate prison interest; however, without a legitimate prison interest in the record the Court cannot make such a determination.